The next case this morning is 523-0558, People v. Spearman. Arguing for the appellant is Allison Golich. Arguing for the appellee is Max Booz. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. How are you all? Thank you, your honor. Well, thank you. A couple of things before we get started with the oral arguments. I know Madam Clerk stated that we've got some non-video participants. Do we have all of those accounted for, Madam Clerk? Yes, sir. Okay. The other thing we need to take up, we received a motion for leave to cite additional authority by the people to cite People v. This is the second time I've had a difficult one. Quezada, Q-U-E-Z-A-D-A, 2024, Illinois, 128-805 as additional authority. My question first is to Ms. Golich. Are you able to respond to any argument made on this case, and or would either counsel think they need time for any additional briefing on the issue? I'm prepared to answer any questions your honors would have on this case, and do not need any additional time for briefing. Okay. The people have the same position. Great. Thank you so much. So with all that taken care of, Ms. Golich, go right ahead. Thank you, your honors. Counsel, may it please the court, my name is Allison Golich and I represent Mr. Joe Spearman in this case. Just briefly, I noticed that the timer isn't running. Thank you. Um, Mr. Spearman was denied a fair trial with effective counsel. Because of counsel's deficient performance, the jury's determination was impacted by considerable improper, irrelevant, and prejudicial evidence. For example, assented with an insufficient stipulation that relieved the state of its burden to prove the weight of the controlled substances. The jury was repeatedly told the gun recovered was loaded and ready to fire, even though this was irrelevant and prejudicial. An officer testified to improper hearsay from the person caught actually possessing the contraband here. The jury heard evidence of Mr. Spearman's prior felony conviction, which could have been presented in a separate trial, or prejudice mitigated. The jury listened to irrelevant jail calls that seemed incriminating on their face, but many of which were either wholly irrelevant or without proper context. The jury's role was usurped by improper lay witness testimony. And finally, the jury was given no clarification as to whether there was a transcript of these calls and whether the state's transcription was evidence. Will each of counsel's errors individually prejudice the outcome of this case? Even if each error itself does not require reversal, the aggregate effect of these errors denied Mr. Spearman a fair trial. I plan to discuss why this court should reverse and remand under issues 2A and C, counsel's ineffectiveness for failing to object to improper evidence pertaining to the firearm and for failing to sever the UPWF charge or mitigate its damage. These errors go to the very heart of this case, asking the jury to not only consider properly admitted evidence, but also to convict based on an improper suggestion that Mr. Spearman is a bad, dangerous, violent drug dealer deserving of punishment. Should this court prefer I address any of the other issues instead, or in addition, I am happy to do so. Then I'll begin with issue 2A. The state repeatedly presented and emphasized that the firearm was loaded with a round chambered ammunition in the magazine and the safety off. As evidence was irrelevant and prejudicial as to this, counsel erred in failing to object to its admission. This evidence was irrelevant. Evidence is admissible if it's probative to the offense charged. The charges relating to the possession of a firearm here were the armed violence and the unlawful possession of a weapon by a felon, UPWF. But whether there is a round chambered ammunition in the magazine, the safety off, the gun is loaded, neither of those are elements of either of those charges as seen in the statute. You can compare this to aggravated unlawful use of a weapon in which the weapon being loaded is an element, not so here. And armed violence is defined as a felony while armed with a dangerous weapon. Excuse me, that's a weapon on or about someone's person or with an immediate access to or timely control over the weapon. Cases define that as within the defendant's reach. The fact that Mr. Spearman had a gun in the seat next to him in a car that he was driving proved that possession and that it was within his immediate reach. People v. Anderson says that there's no requirement in the armed violence statute that the gun is loaded and that the statute does not discriminate between a loaded and unloaded firearms. At least 10 times throughout the entire argument in the state's opening statement, they presented physical evidence, they presented testimonial evidence, they presented video evidence, and then the officer narrated this video evidence where he said, I'm clearing the gun, I'm making it safe. It was emphasized repeatedly throughout this case, and that was prejudicial. So even if this court finds some limited probative value to this, which we contend there was none, like in Peeble v. Lee and in Peeble v. Breitkart, a first and then a fifth district case respectively, that this extra extraneous evidence is just to arouse the jury's passions here. And the same in this case, discussing this gun as ready to fire, excuse me, the prosecutor said in the closing arguments, it's loaded, it's chambered, all that's needed to fire was to unzip the bag and pull the trigger. This is really inflammatory, showing that he is just this violent, dangerous man. But he has no violent history, he's not a violent man, he's not a dangerous man, and the case should have been focused on the evidence of the elements of the crime. In Peeble v. Lee, it was aggravated unlawful use of a weapon, so the fact that it was loaded was relevant, but the character of the bullets, that they were hollow point bullets, that was a step above and beyond, just to inflame the passions of the jury, and thus it was reversible, plain error, because it impacted the case there. And it's also notable that evidence that Mr. Spearman possessed the purse and intended to deliver the controlled substances that was in the purse was not overwhelming, so this improper evidence was especially prejudicial on that point, and the fact that it asked the jury to decide based on this improper character, not based on the evidence here. Which leads us to issue 2c, which brings a similar prejudicial value. There is counsel's failure to sever the UPWF charge or alternatively mitigate the prejudice. Illinois courts have consistently found that joining other criminal charges with a UPWF charge severely prejudices the defendant. That's because of the significant propensity risk, which we recognize is really significant when you have a prior felony that can impact other cases. The Illinois Supreme Court in Lindgren, in Manning, recognizes how significant other crimes evidence is. So when counsel has no strategic reason for not moving to sever the UPWF count from the other, as was here, then the more serious, from the other more serious charges, excuse me, counsel may be found ineffective. We know that from People v. Udley in the first, we also know that from People v. Howard persuasive authority from the third. People v. Howard is particularly relevant because the court went through and said there was no, quote, all or nothing strategy where the evidence is significantly stronger on the UPWF charge compared to the more serious charges. In that case, there was no hope, quote, no hope of a not guilty on that lesser UPWF charge. We have the same here. Mr. Spearman said to the officer and on the jail calls that he would likely have his fingerprints on this gun, and then the gun tested positive for his DNA. So the evidence was significantly stronger on this gun charge compared to the other more serious charges, and he was facing a de facto life sentence on the other charges, whereas he faced a maximum of 10 years on the UPWF charge. So it was unreasonable assistance for counsel not to move to sever these charges where that propensity risk, as we know from People v. Edwards, is so significant from this other crimes evidence. And People v. Howard and People v. Udley both discussed that even though this is a ineffective assistance of counsel claim, that prejudice analysis is the same despite it not being trial court error. So that significant prejudice, that propensity issue here is just as relevant in an ineffectiveness claim when there's no trial strategy to failing to sever. And People v. Howard, as well as People v. Salgado, People v. Brown also discussed the issue of even if you don't sever, then you certainly need to have this limiting instruction, this IPI 3.13x. So these three different decisions within the past five years found that counsel was unreasonable for failing to request this limiting instruction. People v. Brown specifically said there's no legitimate trial strategy in refusing the only instruction designed to provide jurors with guidance on the limited purpose for which they were to consider defendant's prior conviction. So while the admission in this case was not improper, the jury was allowed to improperly use this prior conviction on any crime that it wanted to with this propensity evidence. This was ineffective assistance of counsel. And the appellate court has found reversal was required on this very basis in Salgado and in Howard because the jury may have been over-persuaded by this other crime's evidence. The state recognizes the committee note, excuse me, in that IPI, which says that it should only be given when requested by defense counsel or by defense, excuse me. Well, that's the very issue here, that it was unreasonable trial strategy not to request it. And Salgado explicitly denies that argument by the state because of that unreasonable trial strategy not to include it. I will just finish with noting that the prejudice here is significant in each case, but the cumulative prejudice in this case is extremely significant. We raised nine different issues of ineffective assistance of counsel, and each of those have a reasonable probability that the result would have been different. A reasonable probability is a probability, excuse me, to undermine the confidence of the verdict here. With all of these trial errors, the verdicts, our confidence should be undermined in this verdict. And there are four main reasons for that. First, the evidence of Mr. Spearman's gun, possession, excuse me, of the controlled substances was tenuous. It was in a Gucci purse, clutched abnormally tight to the chest of the female passenger. It was deep down. You open the pocket, the gun is in a different pocket. It's much more reasonable, and the jury could have reasonably found Mr. Spearman when being pulled over by the police, said to the passenger here, hold this gun and hide this gun, not knowing what was in this cross-body women's bag. The evidence of his intent to sell was even weaker. Monaghan said the amount could be for personal use. The methamphetamine amongst three people could be for personal use. There's no otherwise. It's not packaged for delivery. There's paraphernalia for personal use, and the state even admitted that without the jail calls, they wouldn't have a intent to deliver. And there was an overwhelming amount of evidence that the jury should not have heard. I won't go through the list here with your honors today because we are short on time, but it's discussed extensively within the brief. And finally, I'll note that we know the jail calls were fundamental to the jury's verdict in this case because both the state and the court emphasized that at trial, and there would have been no need for the jury to ask to see a transcript and to re-listen to these calls if the evidence was otherwise overwhelming. So I see that I am running out of time here, so I will save my remaining arguments for rebuttal. Thank you, your honors. Thank you, counsel. Justice Shiller, Justice Moore, do you have any questions? No, thank you. I just want to commend you on getting so many words in in 10 minutes. My apologies for my rapid speaking. I just want to make sure we get it all on the table. Well, obviously, there's a lot going on with this case and trying to get through everything in a short period of time. So that was a commendable argument. Mr. Booz, if you're ready, go right ahead. Yes, thank you, your honor. Counsel, and may it please the court. I'd like to begin by noting two pieces of evidence. First of all, defendant's admission to being present with the passenger in order to deal narcotics, specifically a statement that he was there to bust a jug, which expert testimony determined was a term meaning to deal narcotics. Defendant said he was there to deal narcotics. Further, on page 340 of the record, there was the question, based on your training and experience, would the possession of 30 grams of a substance containing methamphetamine be consistent with possession for personal use? Answer, it would not be. So I'd just like to clarify those two points of evidence in the record given counsel's argument. However, the broader point is that defendant's argument fails where defendant was found possessing a gun, excessive amounts of cash money, and the narcotics at issue altogether. It was critical for both points that defendant primarily argues that the materials were found together with evidence of its knowledge that they were together and, moreover, that their being found together was indicative not only of his individual possession of them, but of the armed violence charge which has the gun being involved with the possession of the narcotics with intent to distribute. We can't disentangle the evidence's application to those charges any more than we can try to pretend that those charges should have been resolved separately. Now, I'm not referring to the possession of a felon charge when I say that. I'm referring to the armed violence where the possession, as defendant insists on reply and in argument, says there is no hope of winning on the possession of that firearm. That applies to both the armed violence and to the possession of a  the ability to argue prejudice given not only the DNA evidence, but now defendant's concession that he was going to be found guilty of possessing that gun. That has to be combined with the other evidence in the case in determining whether or not defendant has carried his burden, not the people's burden, of showing that the evidence was either sufficient or that counsel was ineffective. To be clear, the prejudice has to be evaluated against the total weight of the evidence since an overwhelming weight of evidence establishes that defendant cannot establish the kind of prejudice he requires in order to overturn his convictions. And then also that each of the pieces of evidence, to the extent that they are viable in terms of an ineffective assistance claim, are enough to establish the kind of prejudice he requires. So that's why the people argue separately. First of all, the evidence was overwhelming. He admits he was there to deal with drugs. He cannot overcome the possession of the gun. The gun and the drugs were there together, and he had even enlisted someone with a drug debt to him in order to deal drugs that day. The people otherwise incorporate their fuller recitation of the evidence establishing defendant's guilt for this crime, but insist that the standard has to be followed here, which is not only a question of overwhelming evidence, but also that the individual items established as ineffective are enough to overturn the conviction and show that there is a probability, not a possibility, that the conviction would not have occurred absent that evidence. Simply put, numbers don't make the case here. It is the viability of those challenges to the underlying trial proceedings. That's one thing that Quezada and Illinois Supreme Court's recent decisions have shown, that we don't just evaluate the number of issues. If they are not part of the overall concern, Quezada lets us know that they are not to be considered in determining prejudice, in evaluating whether or not this is a claim that should go forward and undo the jury's work. In Quezada, there was a finding that he was not denied a fair trial where there's no showing that the individual claims, when they are insufficient, don't establish the finding that defendant, or don't establish the burden that defendant is required to carry. As to the items argued by defendant specifically, the firearms evidence was, again, entwined within the other charges in the case. He possessed the gun. It was operable. Defendant argues that this operability stipulation should have foreclosed any additional evidence is fully contradicted by defendant's other argument that stipulations cannot be relied upon in order to establish the elements that they establish by their plain language. To be clear, defendant cannot argue on one side that a stipulation is insufficient on its own, and then argue that the prosecution should have been limited to only proceeding by stipulation when establishing an element. Moreover, the firearms evidence itself was proper, since its utility was not limited to inflaming the jury against him, but related to the possession in the case. The reason why the gun was loaded was because defendant needed it to be loaded because he was dealing narcotics. The possession of one went to the possession of the others. Well-established principle that narcotics and guns sadly go along together. And so, when the people are establishing this evidence to show that defendant had the gun for a reason, which is to accompany him in dealing narcotics, that goes to the intent that he had to deliver the narcotics at issue, as well as his possession of the narcotics. He knew those narcotics were there. That's why he had the gun. The people had to establish that possession in relation to a useful weapon while dealing narcotics. The fact that it was usable reinforced its joint possession alongside the drugs. As to the severance of a possession of a weapon by a felon, defendant has now insisted that he could not defend against the possession of a weapon by a felon. That possession primarily through the DNA at issue, as well as his other statements, his looking to the officer when asked, looking at the bag when asked whether a weapon was present, all of that implicates the argument that defense counsel made. On closing, defense counsel asserted that even if the evidence of intent to deliver might be present in the case through statements such as busted jug, while the jury might find that he intended to deal drugs, that intent was not established in this case. That was the closing argument. That is what counsel asserted as a basis to give the jury an opportunity to find defendant not guilty on the class X charges and instead restrict its guilt finding to a class 3 offense for UUWF. That is certainly a strategic consideration and thus defendant does not establish ineffective assistance. However, the prejudice concerns are also significant here. Counsel is asserting that this conviction fundamentally turned the convictions provide prejudice are one by giving the details of the conviction. That is, it is established that when counsel seeks to prevent that prejudice by allowing only the fact of the conviction and not any details to be presented, that is effective assistance. And in fact, it can be ineffective assistance, contrary to defendant's following argument on the details of the conviction, it can be ineffective assistance to allow those details to be present. So that is one way that the prejudice was limited in this case. Also, the other evidence in this case, which the people otherwise assert in their brief, I apologize, but given the length of time, I'm going to focus our argument here. The argument on that conviction not only relates to the prejudice by restricting it to the mere fact of a conviction, but also the other evidence in the case establishing that defendant was a drug dealer. There was already other evidence in the case that defendant was there to bust a job, that defendant had knowledge of narcotics transactions details, that he had dealings with individuals involved in the narcotics trade, that he sought knowledge of the narcotics trade. And so that evidence forecloses any substantial claim of prejudice. Put simply, the conviction for possessing a firearm, the fact that he had this prior conviction could not have established prejudice because the jury was restricted to the mere fact of a conviction and also already had the evidence that he had been involved in prior offenses by dealing narcotics. Your Honors, I see my time is coming to a close. If you have any questions. Justice Scholar, Justice Moore, any questions? No questions. Well, thank you, counsel. Thank you, Your Honors. Ms. Gowish, go right ahead with your rebuttal. Thank you, Your Honors. Since we have limited time, I'll just kind of focus the rebuttal on one main point. I just want to clarify that other than argument 1A about the stipulation, the remaining arguments are not a sufficiency argument. So if there are any reasonable inferences that could be made other than what the evidence was presented, that can establish a reasonable probability that undermines the jury's confidence in the verdict. And I want to clarify that there has to be, if there are weaknesses on any element, that prejudice can be established. It doesn't have to be weaknesses on every element. So even if the evidence was particularly strong on possession of the firearm, that doesn't mean that it's particularly strong on possession of the controlled substances and intent to sell the controlled substances. So the argument that he didn't have that strong of a chance of an acquittal on one doesn't mean that he didn't similarly have a strong chance of an acquittal on the others. And this evidence can sufficiently prejudice. I'd also like to clarify that Mr. Spearman did not on the jail calls admit to selling drugs or to being there to sell drugs. And so there are three reasons why the prejudice can still amount in this case. Officer Frye testified as to what Mr. Spearman said on those calls. The jury is free to disagree with what Officer Frye testified to. And unfortunately, they weren't informed of that, that what was said on the calls, they can decide what their interpretation is and their is controlling. But certainly what was said and what was meant on the calls, the jury's interpretation is controlling. So if they did agree that he said, bust a jug, they might think that means something completely different. And they're free to disagree with that. In fact, in people versus Lee, the court found that the evidence was closely balanced, even when an officer testified that he saw in an aggravated unlawful use of a weapon case, the defendant with the gun and throwing the gun, and the jury was still free to decide that that wasn't either credible evidence or it wasn't, it didn't relieve their doubts about the case. And here, they might still be doubtful. And there's ample evidence to show that they weren't exactly sure what was said on the jail calls, they asked to relisten to them. And they didn't come back immediately with a guilty verdict based on what Officer Frye testified to. And the third reason, in addition to they could have disagreed with what they thought he said and what he thought they meant. The jury could find that this statement didn't refer to the charge drugs in this case, there were other substances in the car. And Mr. Spearman said on the jail calls, he had no idea that the cocaine and the methamphetamine were in this bag was in a completely different pocket. And you can see from the photos, if you open up that pocket, you can't even tell what it is unless you take them out of the bag. So this purse that he said was already in the car that there's evidence that it didn't come from him. The fact that there was a gun in a separate pocket does not necessarily lead to that conclusion. And maybe in the light most favorable to the state it does, but that's not what we have here. We have a prejudice argument, it's just a reasonable probability. And that can be less than 51%. We don't have to say more likely than not. It's just is our confidence undermined in this verdict and all of these errors that go to these elements that are weak, our confidence should be undermined. So I just like to finish because we did raise several issues here. I just want to be clear about the relief that we're asking for. So Mr. Spearman respectfully requests that this court reverses convictions for armed violence, delivery of methamphetamine, and the manufacture or delivery of a controlled substance and remand for a new trial pursuant to Issue 2. And while we do not address this argument today, Mr. Spearman also requests pursuant to Issue 1 that this course reduce his convictions for delivery of methamphetamine and manufacture or delivery of a controlled substance and remand for resentencing or reverse those convictions and remand for a new trial. And the sufficiency of that stipulation is what's at issue. The distinction between that stipulation and the other stipulation is that one stipulation didn't sufficiently meet the state's burden to prove every element in terms of the controlled substances and their weight, whereas the other stipulation did sufficiently say that this was an operable weapon and there was evidence presented that Mr. Spearman was in close enough proximity to constructively possess it and that it was immediately accessible to him. So all of this evidence above and beyond was not part of the element, so the stipulation isn't relevant. That's the final points I would like to make. With the remaining 30 seconds, I'm happy to take any questions. Otherwise, I will just rest on my briefs. Thank you, Counsel. Justice Moore, Justice Schoeller, do you have any questions? No. No questions. Thank you. Well, Counsel, obviously, thank you for your arguments today. We will take the matter under advisement. We will issue an order in due course.